**Scott L. MATTHEWS, Plaintiff–
Appellant,**

v.

**Leon E. JONES, Sr., Jefferson County Po-
lice Department, and Unknown Police
Officer, Jefferson County Police Depart-
ment, Defendants–Appellees.**

No. 93–5249.

United States Court of Appeals,
Sixth Circuit.

Argued March 24, 1994.

Decided Sept. 20, 1994.

William M. Radigan, Walker & Radigan, Louisville, KY (argued and briefed), for plaintiff-appellant.

N. Scott Lilly, Jefferson County Atty's Office, Dave Whalin, Landrum & Shouse (argued and briefed), William Dennis Sims, Office of Legal Affairs, Jefferson County Police Dept., Raymond J. Naber, Jr., Naber, Joyner, Schardein & Stinson, Louisville, KY, for defendant-appellee.

Before: NELSON, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Plaintiff Scott L. Matthews brought this action on May 24, 1991, pursuant to 42 U.S.C. § 1983, alleging that in the course of his arrest he was severely bitten by a police dog and that the use of the police dog constituted an unconstitutional use of deadly force in violation of the Fourth and Fourteenth Amendments. On August 19, 1991, plaintiff filed a motion for leave to file an amended complaint in order to add Officer Robert Michael Watkins as a named defendant. The district court denied plaintiff's motion to amend his complaint finding that Officer Watkins did not receive notice of the filing of the suit until after the statute of limitations had run. On January 25, 1993, the district court granted summary judgment in favor of

defendant Leon E. Jones, Sr. finding that the use of force against plaintiff was reasonable under the circumstances. We affirm the district court because we hold that the facts as alleged by Matthews do not state a claim under 42 U.S.C. § 1983.

## I

On May 26, 1990, in the wee hours of the morning, plaintiff Matthews was driving his motor vehicle in Jefferson County, Kentucky, when a police officer, believing that Matthews was speeding and driving recklessly, began to pursue him in a marked police car. Matthews, who had been drinking and was driving on a suspended license, fled from the pursuing officer. Eventually, Matthews pulled his car off the road and ran into nearby woods. Officer Watkins, a canine handler, and his assigned canine, a Rottweiler named Roscoe, arrived at the scene within one minute after Matthews fled from his car. A police helicopter also arrived on the scene but could not locate Matthews because he had fled into heavy trees and undergrowth. At this point, the officers did not know the extent of the crimes Matthews might have committed, whether he was armed, or why he fled his vehicle.

When the officers on the scene were unable to locate Matthews, they called out orders for him to surrender; Matthews did not respond. Officer Watkins and Roscoe then began to track Matthews. Roscoe was on a leash during the entire tracking period. Eventually Roscoe stopped at the edge of a swampy, heavily wooded area and reacted as if the suspect were nearby. Officer Watkins ordered Matthews to surrender and warned that the dog would be released if he did not. Matthews did not respond. Watkins warned Matthews again and again there was no response.

Watkins then released Roscoe from his leash and Roscoe ran approximately fifty feet into the woods, stopped and alerted. Watkins shined his flashlight in the immediate area near Roscoe and discovered Matthews lying on his stomach in the weeds, his hands underneath his body. Watkins ordered Matthews not to move and informed him that if he remained still the dog would be recalled.

Instead of complying with Officer Watkins's order, Matthews quickly rose to his knees; Roscoe reacted to the sudden movement by biting Matthews on the arm and holding him there. Matthews struggled with the dog, causing Roscoe to reposition his bite. At that point, Watkins ordered Roscoe to release Matthews and took Matthews into custody.

Matthews was arrested and charged with driving under the influence, reckless driving, attempting to elude, resisting arrest, and operating on a suspended license. On June 18, 1990, he pled guilty to public intoxication, resisting arrest, and operating on a suspended license.

Matthews originally filed his complaint in the Circuit Court of Jefferson County, Kentucky, on May 24, 1991, naming Capt. Leon E. Jones, Sr. and an "unknown police officer" as the only defendants. Matthews's complaint contends that the canine officer's use of a police dog, which resulted in extensive and severe injury to Matthews, constituted the use of deadly, or, alternatively, excessive force, in violation of the Fourth and Fourteenth Amendments. Matthews also alleges that his injuries were the result of inadequate training of the police dog and of police officers in the Jefferson County Police Department. Matthews later moved to amend his complaint; that motion was denied, as was a motion for reconsideration. The district court then granted Chief Jones's motion for summary judgment, and this appeal followed.

## II

Matthews argues on appeal that the district court erred in granting defendant's motion for summary judgment, and in denying his motion to amend. We address first the granting of summary judgment.

■ Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A district court's grant of summary judgment is reviewed de novo. *Pinney Dock & Transport Co. v. Penn Central Corp.,* 838 F.2d 1445, 1472 (6th Cir.),

*cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

■ Matthews sued Chief Jones only in his official capacity as the Chief of the Jefferson County Police Department. A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 68, 109 S.Ct. 2304, 2310–11, 105 L.Ed.2d 45 (1989). Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint. *See Smallwood v. Jefferson County Government,* 743 F.Supp. 502, 503 (W.D.Ky.1990); Ky.Rev.Stat. Ann. § 95.-010(e) (Baldwin 1989); *see also Brown v. Marshall County,* 394 F.2d 498 (6th Cir. 1968). The County may be held liable for Matthews's injuries only if those injuries were the result of an unconstitutional policy or custom of the County. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Matthews appears to argue on appeal that the use of the police dog Roscoe to apprehend him was pursuant to a policy or custom of the County to use deadly or excessive force in the form of a police dog to apprehend suspects not known to be felons or to be armed. He further claims that the County had a policy of not adequately training the police canine officers or the police dogs as to the circumstances in which the police dogs should be used. Matthews can withstand the motion for summary judgment only if he can demonstrate that there are genuine issues of fact remaining for trial relative to such policies or customs of the County.

■ Matthews has neither alleged in his complaint nor presented any evidence in response to the motion for summary judgment that Officer Watkins used Roscoe to apprehend him pursuant to a Jefferson County policy governing the use of police dogs. Nor has Matthews pled or presented evidence that Jefferson County had no regulations whatsoever governing the use of police dogs, and that the lack of any regulations was the functional equivalent of a policy of permitting unregulated use of police dogs. Because the County cannot be held liable for the excessive use of force of one of its police officers in the absence of some policy or custom which resulted in the excessive use of force, we hold that Matthews has wholly failed to state facts giving rise to an excessive use of force claim under § 1983, and summary judgment was properly granted on that claim.[1]

■ Matthews also argues that the Jefferson County Police Department has a policy of inadequately training police officers, including the canine officer and the police dog in this case, and that the lack of proper training resulted in the excessive use of force to apprehend Matthews and the injuries which Matthews claims. In order to hold the County liable under § 1983 for failure to train adequately, the plaintiff must prove that the training program is inadequate to the task an officer must perform; that the inadequacy is the result of deliberate indifference; and that the inadequacy is "closely related to" or "actually caused" the plaintiff's injury. *City of Canton v. Harris,* 489 U.S. 378, 390–91, 109 S.Ct. 1197, 1205–06, 103 L.Ed.2d 412 (1989); *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir.1989).

■ The record contains no evidence that Roscoe was inadequately trained, and, to the contrary, contains evidence of considerable training. The record also contains evidence of extensive training for Officer Watkins. Matthews has offered no evidence that this training was inadequate to the tasks which a canine officer is required to perform,[2] that

---

1. The excessive force claims in Matthews's original complaint appear to target the canine officer as an individual; however, Matthews joined that officer as "Unknown Police Officer, Jefferson County Police Department," a designation of the officer in his official capacity only. *See Wells v. Brown,* 891 F.2d 591 (6th Cir.1989).

2. Matthews's brief in opposition to summary judgment in the district court opined that the

inadequacy of training was evidenced by the defendant's own documentation of the training received by Officer Watkins and Roscoe, inasmuch as the affidavit of Officer Watkins "sets forth the training that he has had and the training that was given to his canine dog, Roscoe. If one looks at the subject matter that was covered in each of these training programs ... there is no specific training on the constitutional limitations of the use of canine force." We suspect

there was deliberate indifference by the police department, or that inadequate training caused Matthews's injuries. It is clear that Matthews's own actions in attempting to rise when he was told not to move caused his injury.[3] The police department is not liable for Matthews's injuries due to inadequate training of its officers.

Finally, Matthews claims that the district court erred in denying his motion to amend his complaint to name Officer Watkins as a defendant. The district court denied the motion on procedural grounds. We decline to reach the procedural question, but hold that, for the reasons which follow, the motion was properly denied.

First of all, Matthews's proposed amended complaint makes no effort to name Officer Watkins in his individual capacity, and is identical to the original complaint but for the specific naming of Watkins. Therefore, for the same reasons that the original complaint did not, the amended complaint also does not state a claim under 42 U.S.C. § 1983. When a proposed amended complaint does not state a cause of action, a motion to amend is properly denied. *See Neighborhood Development Corp. v. Advisory Council on Historic Preservation,* 632 F.2d 21, 23 (6th Cir.1980).

Second, even if Matthews had attempted to name Officer Watkins in his individual capacity, the facts as alleged by Matthews do not state a claim under 42 U.S.C. § 1983 for the use of deadly or excessive force. The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' " should be analyzed under the Fourth Amendment's "objective reasonableness" test. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The Court stated that this holding made explicit what had been implied in the

analysis in *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), and that application of this test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. The "reasonableness" of an officer's use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

This court has dealt explicitly with the use of a police dog to apprehend a felony suspect. *Robinette v. Barnes,* 854 F.2d 909 (6th Cir. 1988), was a case in which the police dog was used to find and apprehend a burglary suspect hiding in the burglarized building. The use of the dog resulted in the death of the suspect, and the claim brought by his estate was analyzed by this court under the standard set out in *Tennessee v. Garner,* that is, whether the use of deadly force under the circumstances of the case was objectively reasonable. Noting first that whether deadly force in fact was used to seize a criminal suspect is an issue that must be determined in the context of each case, we held that the use of the police dog in that case did not constitute the use of deadly force as contemplated by *Garner.* We found that the Model Penal Code § 3.11(2) provided a

> useful statement of the two factors most relevant to the determination of whether the use of a particular law enforcement tool constitutes deadly force: the intent of the officer to inflict death or serious bodily harm, and the probability, known to the officer but regardless of the officer's intent, that the law enforcement tool, when employed to facilitate an arrest, creates a "substantial risk of causing death or serious bodily harm."

that Roscoe might not have benefitted from instruction on the constitutional limitations on his use, and we find that the training that Officer Watkins received included, according to his affidavit, training in "the proper use of force in a police situation."

**3.** "When a dog bites a man, that is not news, because it happens so often. But if a man bites a dog, that is news." John B. Bogart, *in* Familiar Quotations 731 (John Bartlett, ed., 13th ed.1955). It should not have been news to Matthews that he would be bitten by a properly trained police dog when he made a sudden move while attempting to elude the police.

*Robinette,* 854 F.2d at 912 (quoting Model Penal Code § 3.11(2) (Proposed Official Draft 1962)). With regard to those factors we said, "More importantly, we find that the use of a properly trained police dog to apprehend a felony suspect does not carry with it a 'substantial risk of causing death or serious bodily harm,'" and that "when a properly trained police dog is used in an appropriate manner to apprehend a felony suspect, the use of the dog does not constitute deadly force." *Id.* at 912–13 (footnote omitted). We noted that although a § 1983 action might lie if the dog had been improperly trained, the plaintiff would be required to show that the improper training resulted from something more than negligence. *Id.* at 912 n. 3. Finally, we held that even if the use of a police dog to apprehend a suspected felon did constitute deadly force, the use of such force in the circumstances of that case was not unreasonable, concluding that where the officer was forced to explore an enclosed unfamiliar area in which he knew a man was hiding, the officer would have reasonably believed that the suspect posed a threat to the officer and to others. *Id.* at 914.

Although *Robinette* was decided before *Graham,* it was decided under the "objective reasonableness" standard which the latter requires. Therefore, unless there is some basis upon which to distinguish Matthews's case from *Robinette,* Matthews cannot state a claim on the facts as he alleges them to be.

The police officers in *Robinette* believed that the suspect the police dog was directed to find was in the act of committing a felony. In the case at hand, it is not disputed that the officers on the scene did not know the extent of crimes that Matthews might have committed nor did they know whether he was armed. Neither is it disputed, however, that the police officer pursuing Matthews had legally sufficient grounds to stop him, and that before the officer could do so, Matthews fled from his car into a densely wooded area in the dark of night. Matthews was obviously fleeing in an attempt to evade the police; the area into which he fled in the darkness provided a strategic advantage to Matthews in that he could easily ambush the officers; and Matthews's extreme behavior provided cause for the officers to believe that he was involved in activity considerably more nefarious than mere traffic violations. We hold that a reasonable police officer under these circumstances would have believed that Matthews posed a threat to the officers' safety as well as the safety of others, and that this case cannot be distinguished from *Robinette* on the basis of the officer's lack of specific cause to believe Matthews was a felon.

The *Robinette* court held that there was no evidence that the police dog used to find the suspect had been improperly trained or that the officer commanding the dog had intended to create a "'substantial risk of causing death or serious bodily harm.'" *Robinette,* 854 F.2d at 912 (quoting Model Penal Code § 3.11(2) (Proposed Official Draft 1962)). We have already held that the record here contains no evidence of inadequate or improper training of Roscoe. Further, we hold that this record contains no evidence whatsoever of an intent on the part of Officer Watkins to create a substantial risk of death or serious bodily harm. To the contrary, it is clear from the record that Officer Watkins gave Matthews every chance to avoid any contact with Roscoe. We hold that this case cannot be distinguished from *Robinette* on the basis of improper training of the police dog or improper intent on the part of Officer Watkins.

Finally, we hold that there is no evidence whatever in this record which could support a claim that Roscoe was not used in an "appropriate manner." *See Robinette,* at 913. The record is clear that Officer Watkins not only warned Matthews several times before releasing Roscoe to apprehend him, but when he found Matthews lying in the weeds, his hands concealed beneath his body, Watkins explicitly ordered him not to move, advising that if Matthews remained still, Roscoe would be recalled. Matthews chose to move, and Roscoe enforced the order.[4] Therefore, we hold that the facts as Matthews alleges them to be do not state a claim under 42 U.S.C. § 1983 for an unconstitutional use of deadly force.

---

4. Matthews admits in his affidavit opposing summary judgment that when Officer Watkins finally found him, Watkins ordered him not to move.

Matthews also admits that he did move, although he characterizes his movement as "instinctive," and, despite putting the best face on it from his

That the force used to apprehend Matthews was not deadly does not end the inquiry, however. Matthews claims alternatively that the use of the police dog, even if not deadly force, was excessive because the officers involved did not know the nature or extent of his criminal activities and did not know whether he was armed. Our observations in *Robinette*, relative to our reluctance to label "unreasonable" the police practice of using police dogs, are equally applicable here:

> [W]e believe that these dogs often can help prevent officers from having to resort to, or be subjected to, [deadly] force. Any attempt to apprehend a criminal suspect presents the officer with [a] difficult and frightening situation, but certainly an attempt to arrest a suspect hidden inside an unfamiliar building during the nighttime presents a particularly confusing one. The use of dogs can make it more likely that the officers can apprehend suspects without the risks attendant to the use of firearms in the darkness, thus, frequently enhancing the safety of the officers, bystanders, and the suspect.

*Robinette*, 854 F.2d at 914. The complaint and the proposed amended complaint are identical in substance. In each of them Matthews admits that he was fleeing into a dense woods in the dead of night in an attempt to evade arrest. We hold that it is clear from the evidence presented in support of and in opposition to the motion for summary judgment on the original complaint that there is no dispute as to the facts material to the issue of whether use of the police dog to apprehend Matthews constituted excessive force, and that no reasonable jury could conclude that the use of the police dog to apprehend Matthews was not objectively reasonable.

### III

For the foregoing reasons, the district court's grant of summary judgment in favor of defendant is **AFFIRMED.**

---

own perspective, Matthews admits that Roscoe did not touch him until Matthews moved.

\* Judge Wellford would grant rehearing to clarify the opinion and clearly limit Huguley's rights to