72 F.3d 129
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Willie R. CALDWELL, individually and as the Personal
Representative of the Estate of Mary Ruth Payne,
Deceased, et al., Plaintiffs,
v.
Pamela S. ENYEART, R.N., individually and in her official
capacity, et al., Defendants,
Washtenaw County, a municipal corporation,
Defendant/Cross-Plaintiff-Appellee,
ARA Health Services, Inc., doing business as Correctional
Medical Systems, Inc. of Michigan, a Missouri
Corporation. Defendant/Cross-Defendant-Appellant.
 No. 94-1406.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1995.
 
 Before: KRUPANSKY, MILBURN, and NELSON, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant ARA Health Services, Inc., d/b/a Correctional Medical Systems, a/k/a Correctional Medical Systems, Inc., of Michigan ("CMS") appeals the district court's grant of summary judgment in favor of plaintiff Washtenaw County ("the County") on the County's cross-claim against CMS, which sought indemnification and attorney fees arising out of an underlying civil rights action, filed pursuant to 42 U.S.C. Sec. 1983, which had been brought against the County and CMS. On appeal, the issues are (1) whether the district court improperly granted summary judgment for the County when it failed to make findings as to the scope of CMS's contractual duty to indemnify the County; (2) whether the district court improperly granted summary judgment for the County because under Michigan law a party cannot be indemnified for its own gross negligence or wilful and wanton misconduct; (3) whether a contract to indemnify for gross negligence or wilful and wanton misconduct violates Michigan public policy and is, therefore, void under Michigan law; and (4) whether the district court's award of attorney fees is excessive, unreasonable, and constitutes an abuse of discretion. For the reasons that follow, we reverse the grant of summary judgment and vacate the award of indemnification and attorney's fees.
 
 I.
 A.
 
 2
 The underlying action in this matter arose out of the death of Mary Ruth Payne, who was incarcerated at the Washtenaw County (Michigan) jail. The County had entered into a contract with CMS to provide medical services to inmates at the County jail. The Contract contained an indemnification clause, which provided in relevant part:
 
 
 3
 The Contractor will protect, defend and indemnify Washtenaw County, its officers, agents, servants, volunteers and employees from any and all liabilities, claims, liens, demands, and costs, including legal fees of whatsoever kind and nature which may result in personal loss or death to any persons, their family, heirs, assigns, and for loss or damage to any property including property owned or in the care, custody or control of Washtenaw County in connection with or in any way incident to or arising out of the occupancy, use, service, operations, products or performance or nonperformance of work in connection with this Agreement including failure of or alleged failure of, omission, Breach of Duty, or neglect in rendering or failure to render professional services resulting in whole or in part from negligent acts or omissions of Contractor, any subcontractor, or any employee agent or representative of the Contractor or any subcontractor.
 
 
 4
 J.A. 120, 263.
 
 
 5
 On January 14, 1988, Payne,[1] an asthmatic, made a request to CMS employees at the County jail for hospitalization, and she allegedly made the same request to Ruth Burke, a County employee. Payne was not hospitalized, and she died that same night as the result of her asthma.
 
 
 6
 Subsequently, on May 3, 1989, Payne's personal representative, Willie Caldwell[2], and various other named plaintiffs, filed an action against the County and certain county officials and employees under 42 U.S.C. Sec. 1983, alleging that the County had violated Payne's constitutional rights and also alleging gross negligence on the part of the county employees.[3] Plaintiffs also sued CMS and some of its employees, alleging gross negligence and medical malpractice.
 
 
 7
 Although "CMS received notice of the complaint on May 5, 1989," it sent a letter to the County on June 1, 1989, "stating that it wished to delay any decision regarding indemnification 'until discovery reveals the strength of plaintiff's allegations and his actual position.' " J.A. 252. Thereafter, on July 31, 1989, the County filed a cross-complaint against CMS seeking to enforce the indemnification agreement in the medical services contract. On January 19, 1990, the County filed a motion for summary judgment on its cross-claim against CMS.
 
 
 8
 A jury trial on the underlying claim began on June 6, 1990. During the trial and prior to the close of proofs, the County settled with the plaintiffs. CMS, however, chose not to settle, and on June 20, 1989, the jury returned a verdict in favor of CMS and its remaining defendant employees,[4] finding no cause of action.
 
 B.
 
 9
 The County's motion for summary judgment, sought enforcement of its indemnification agreement with CMS in the form of attorney fees and the amount of monies paid pursuant to its settlement agreement with plaintiffs. On October 24, 1990, the district court issued an opinion granting the County's motion for summary judgment, finding that under Michigan law, "[t]he County is entitled to indemnification under the applicable provision of the contract," J.A. 258, and was "[l]ikewise ... entitled to reasonable attorney fees," id.
 
 
 10
 Specifically, the district court found "that the all-inclusive language of the present indemnity provision indicates, as do the surrounding circumstances and the purpose of the contract, an intent to protect [the County] against its own negligence." J.A. 256. The district court stated that it was "convinced ... that an indemnification provision written into a contract such as the present one which contains such broad, all-inclusive language was intended to cover the type of claim filed by the present plaintiffs." Id. The district court also found that the indemnification provision was not "ambiguous or unclear." J.A. 257. Finally, the district court found that the indemnification provision clearly and unequivocally stated that CMS would " 'defend and indemnify Washtenaw County ... from any and all liabilities ... and costs, ... including legal fees of whatsoever kind and nature.[5] ' " J.A. 258-59.
 
 
 11
 Subsequently, on February 6, 1991, CMS filed a "Motion for a New Trial as to the County's Cross-Claim ...", requesting that the district court reconsider its decision granting the County's motion for summary judgment. The district court stated that "[t]he sole argument relied upon by CMS in support of its 'new trial' motion is a theory that it is not obligated to indemnify the County for claims of gross negligence." J.A. 266. The district court then found that CMS had "never previously raised or argued" this theory. J.A. 266.
 
 The district court then stated that:
 
 12
 CMS is simply advancing a new argument in this motion for reconsideration without providing any reason why this argument was not advanced in response to the original motion ... Th[e] goal [of finality to litigation] cannot be reached if parties are allowed to present some of their arguments, and after an adverse determination to come back at a later time and raise new arguments in the hope of changing the decision.
 
 
 13
 J.A. 267. Accordingly, relying on our decision in Estate of Quirk v. Commissioner of Internal Revenue, 928 F.2d 751 (6th Cir.1991), the district court refused to consider CMS's argument and denied its "motion for a new trial." This timely appeal followed.
 
 II.
 A.
 
 14
 CMS argues that the district court erred in granting summary judgment in favor of the County on the County's cross-claim for indemnification. "We review a district court's grant of summary judgment pursuant to Fed.R.Civ.P. 56(c) de novo, using the same test utilized by the district court." Moore v. Philip Morris Co's., 8 F.3d 335, 339 (6th Cir.1993) (citing Faughender v. City of North Olmsted, 927 F.2d 909, 911 (6th Cir.1991)). "Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Moore, 8 F.3d 335 (citing Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988)).
 
 B.
 
 15
 CMS argues that the district court erred in granting summary judgment on the County's cross-claim for indemnification because "a material issue exists as to whether Michigan law prohibits indemnification for intentional acts of gross negligence." Appellant's Brief at 4. Thus, CMS asserts "that the trial court incorrectly found that there was no question of fact concerning the liability of the indemnitor. The trial court merely ruled that the indemnity provision was valid and enforceable, but made no findings concerning the scope of ... CMS' liability." Appellant's Brief at 4-5.
 
 
 16
 As noted previously, CMS did not raise the issue as to whether Michigan law prohibits indemnification of a party for its own gross negligence until it filed its "motion for a new trial," which actually sought reconsideration. As a result, the district court found that the issue had not been properly raised and declined to address it. Thus, at the outset, we must determine whether we should decline to consider this issue due to CMS's failure to raise it prior to the grant of summary judgment.
 
 
 17
 As a general rule, we " 'decline[ ] to entertain arguments not presented in the first instance to the district court.' " Taft Broadcasting Co. v. United States, 929 F.2d 240, 243 (6th Cir.1991) (quoting Meador v. Cabinet for Human Resources, 902 F.2d 474, 477 (6th Cir.1990), cert. denied, 111 S.Ct. 182 (1991). "[A]bsent exceptional circumstances, a court of appeals will not consider an argument by an appellant that was not presented to or considered by the trial court." Estate of Quirk v. Commissioner of Internal Revenue, 928 F.2d 751, 757-58 (6th Cir.1991).
 
 
 18
 Nevertheless, we have noted that " '[a] federal appellate court can resolve an issue not passed on below "where the proper resolution is beyond any doubt or where injustice ... might otherwise result." ' " Taft Broadcasting, 929 F.2d at 245 (quoting United States v. Baker, 807 F.2d 1315, 1321 (6th Cir.1986) (quoting Meador, 902 F.2d at 477)). Moreover, where an "issue presents only a question of law" we have been convinced "on occasion to undertake a consideration of the newly presented issue," if " '[t]he issue raised is purely one of law requiring no new or amplified factual determination.' " Taft Broadcasting, 929 F.2d at 244 (quoting Black Motor Co. v. Commissioner of Internal Revenue, 125 F.2d 977, 980 (6th Cir.1942)). "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases;" however, "there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, or where 'injustice might otherwise result.' " Singleton v. Wulff, 428 U.S. 106, 121 (1976) (citations omitted). See also United States v. Markwood, 48 F.3d 969, 974 (6th Cir.1995) ("The issues we may review on appeal are limited to those first presented to and considered by the district court, unless review of an issue is necessary in order to prevent manifest injustice, promote procedural efficiency, or correct clear errors or omissions.").
 
 
 19
 In this case, we believe that exceptional circumstances are present which permit, if not require, us to address the issue which the district court declined to address. First, the issue presented by CMS, namely, whether a contract providing for indemnification of a party for its own gross negligence is prohibited and, therefore, void under Michigan law, is purely a question of law. Second as will be discussed more fully below, the issue raised by CMS must be addressed to correct an injustice which would otherwise result. In this regard, we note that the parties are in complete agreement that the effect of the indemnification provision in the contract between CMS and the County is determined by Michigan law.
 
 C.
 
 20
 Under Michigan law, "indemnity contracts like other contracts, are to be enforced so as to effectuate the intentions of the parties." Gartside v. Young Men's Christian Ass'n of Metropolitan Chicago Foundation, 274 N.W.2d 58, 60 (Mich.Ct.App.1978) (per curiam). "There are several well established rules of construction of indemnity contracts." Chrysler Corp. v. Brencal Contractors, Inc., 381 N.W.2d 814, 817 (Mich.Ct.App.1985). "Indemnity clauses are construed most strictly against the party who drafts them and the party who is [the] indemnitee." Klann v. Hess Cartage Co., 214 N.W.2d 63, 64 (Mich.Ct.App.1975). "An indemnity contract will not be construed to indemnify the indemnitee against losses from his own negligent acts, if such intention is not expressed in unequivocal terms. However, this intention need not be expressed in any particular language or form." Id.
 
 
 21
 Nevertheless, although "a party may contract against liability for harm caused by his negligence in performance of a contractual duty, ... he may not do so with respect to his gross negligence." Id. at 65 (citing Shelby Mutual Ins. Co. v. Grand Rapids, 748 N.W.2d 260 (Mich.Ct.App.1967). Further, "[a]n indemnity provision which would be invalid if applied to indemnify a person from liability for his wilful and wanton wrongdoing[6] may, nevertheless, be validly applied to indemnify him from liability for his negligent act." Redfern v. R.E. Daily & Co., 379 N.W.2d 451, 455 (Mich.Ct.App.1985). See Island Creek Coal Co. v. Lake Shore, Inc., 692 F.Supp. 629, 633 (W.D.Va.1988) ("The Michigan Supreme Court has stated that '[g]enerally a party may contract against liability for harm caused by his negligence in performance of a contractual duty, but he may not do so with regard to his gross negligence.' " Klann v. Hess Cartage Co., 214 N.W.2d 63, 65 (Mich.Ct.App.1973). "In like vein, it is against Michigan public policy to insure oneself against one's intentionally tortious conduct.' " See Vigilant Ins. Co. v. Kambly, 319 N.W.2d 382, 385 (Mich.Ct.App.1982)), rev'd on other grounds, 884 F.2d 1388 (9th Cir.1989). See also Universal Gym Equipment, Inc. v. Vic Tanny Intern. Inc., 526 N.W.2d 5, 7 (Mich.Ct.App.) (In which the Court of Appeals of Michigan stated that it agreed with the arguments that "a preinjury release provision absolving a party from liability for grossly negligent conduct violates Michigan public policy."), vacated in part on other grounds, 531 N.W.2d 719 (Mich.Ct.App.1994). Thus, we conclude that under Michigan law a contract to indemnify a party for liability for its own gross negligence violates public policy.
 
 
 22
 Moreover, because such an indemnification agreement is against public policy, it is also void under Michigan law. In Federoff v. Ewing, 192 N.W.2d 242 (Mich.1971) (per curiam), the Michigan Supreme Court stated:
 
 
 23
 "The question whether a contract is against public policy depends upon its purpose and tendency, and not upon the fact that no harm results from it. In other words, all agreements the purpose of which is to create a situation which tends to operate to the detriment of the public interest are against public policy and void, whether in the particular case the purpose of the agreement is or is not effectuated. For a particular undertaking to be against public policy actual injury need not be shown; it is enough if the potentialities for harm are present.
 
 
 24
 Id., at 245-46 (quoting 12 Am.Jur. Sec. 167, p. 664).
 
 
 25
 Furthermore, Michigan Compiled Laws ("M.C.L.") Sec. 691.1407 states in relevant part:
 
 Governmental immunity from tort liability
 
 26
 Sec. 7. (1) Except as otherwise provided in this act, all governmental agencies[7] shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise of a governmental function ...
 
 
 27
 (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment or service or volunteer while acting on behalf of a governmental agency if all of the following are met: ...
 
 
 28
 (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in the subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.
 
 
 29
 M.C.L. Sec. 691.1407 (1995).
 
 
 30
 In addition, plaintiffs sued the County, the Board of County Commissioners, County Sheriff Ronald Schebil, Undersheriff Michael Johnson, Commander Chester Reese, and Sergeant Ruth Burke, alleging that they were "grossly negligent, reckless, and deliberately indifferent to the serious medical needs of the jail inmate population, and to Mary Payne in particular...." J.A. 37. The complaint further stated that:
 
 
 31
 This gross negligence, recklessness, and deliberate indifference includes:
 
 
 32
 A. As to defendants WASHTENAW COUNTY, its BOARD OF COMMISSIONERS, SHERIFF SCHEBIL, Undersheriff JOHNSON, [and] Commander REESE ... all acting in their official capacities....
 
 
 33
 J.A. 51. Defendant Burke was the only defendant to be sued in both her individual and official capacities.
 
 
 34
 "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir.1994) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 68 (1989)). Unless expressly waived, a state and its agencies are immune from an action for damages and injunctive relief, and in some circumstances even declaratory relief, in federal court. See, e.g., Welch v. Texas Dep't of Highways and Public Transp., 483 U.S. 468, 472-73 (1987); Papasan v. Allain, 478 U.S. 265, 276-77 (1986). Here, as set forth above, the State of Michigan has waived its Eleventh Amendment sovereign immunity in tort actions where the actions of a state employee or officer amount to gross negligence; namely, "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. Sec. 691.1407(c) (1995). However, Michigan has not waived its sovereign immunity where actions of a state employee amount to ordinary or mere negligence.
 
 
 35
 Moreover, mere negligence on the part of the County officials is not enough to state either a Fourteenth or Eighth Amendment claim under 42 U.S.C. Sec. 1983. See Jones v. Sherrill, 827 F.2d 1102, 1106 (6th Cir.1987) ("The Supreme Court has held that mere negligence on the part of state officials cannot state a claim for a due process violation under section 1983, stating that due process 'is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty, or property.' " (quoting Daniels v. Williams, 474 U.S. 327 (1986) (emphasis in original)). See also Chesney v. Hill, 813 F.2d 754, 755 (6th Cir.1987) (per curiam) (holding that a cause of action which alleges, at best, negligence on the part of the defendants does not present an actionable claim of a Fourteenth Amendment deprivation under 42 U.S.C. Sec. 1983).
 
 
 36
 In Farmer v. Brennan, 114 S.Ct. 1970 (1994), the Supreme Court stated:
 
 
 37
 Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be objectively "sufficiently serious ..."
 
 
 38
 * * *
 
 
 39
 * * *
 
 
 40
 The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.... that state of mind is one of "deliberate indifference" to inmate health or safety.
 
 
 41
 Farmer, 114 S.Ct. at 1977. The Court continued:
 
 
 42
 [i]n considering the inmate's claim in Estelle [v. Gamble, 429 U.S. 97 (1976),] that inadequate ... medical care violated the [Eighth Amendment] we distinguished "deliberate indifference to the serious medical needs of prisoners" from "negligen[ce] in diagnosing or treating a medical condition," holding that only the former violates [the Eighth Amendment]. We have since read Estelle for the proposition that Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 309, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).
 
 
 43
 While Estelle establishes that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm with knowledge that harm will result.
 
 
 44
 Id. at 1978 (internal citations omitted).
 
 
 45
 Finally, plaintiff's state law claims against the County and the individual County defendants were also predicated on allegations of gross negligence, not mere negligence. Nevertheless, at oral argument, counsel for both parties agreed that the settlement agreement between the County and the individual county defendants and plaintiffs was not part of the record before the district court. Thus, we are unable to determine whether the settlement agreement between the County and the individual county defendants and plaintiffs admits or does not admit liability or guilt. A decision to settle a case may be based upon an number of reasons, some of which are unrelated to the settling parties's belief about its own culpability. For instance, parties who believe that they are not culpable, may nonetheless settle for reasons unrelated to liability, such as the avoidance of adverse publicity, a diminution of employee morale, the costs of litigation, or a loss of productivity associated with prolonged litigation. Accordingly, in the absence of any evidence concerning the settlement in this action, any attempt on appellate review to determine the nature of the settlement between the County and plaintiffs would constitute speculation and conjecture.[8]
 
 
 46
 Therefore, because the broad, all-inclusive language of the indemnity provision at issue in this action was intended to protect the County against the type of claim brought by plaintiff, except for the indemnification of Washtenaw County and its employees against liability for their own gross negligence, we shall reverse the district court's grant of summary judgment in favor of the County on its cross-claim for indemnification against CMS, and remand the case to the district court for further findings as to the nature of the settlement between the County and the plaintiffs.
 
 D.
 
 47
 CMS also argues that the district court's award of attorney fees is excessive, unreasonable, and constitutes an abuse of discretion. Because we shall reverse the district court's grant of summary judgment in favor of the County on the County's cross-claim for indemnification, we do not need to address this issue.
 
 III.
 
 48
 For the reasons stated, the district court's grant of summary judgment in favor of the County on its cross-claim for indemnification against CMS is REVERSED, the district court's award of indemnification and attorney fees is VACATED, and the case is REMANDED for further findings consistent with this opinion.
 
 
 49
 DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.
 
 
 50
 I do not read the contract at issue here as obligating CMS to indemnify Washtenaw County and its employees against liability for their own gross negligence. Accordingly, I would not reach the question of whether a contract provision purporting to impose such an obligation on CMS would be void under Michigan law.
 
 
 51
 The indemnity clause of the CMS contract is poorly drafted, but the intent seems to have been to commit CMS to defend the county against claims connected with or arising out of performance (or nonperformance) of the contract by CMS, indemnifying the county against liabilities and costs, including legal fees, incurred in that connection only. If this is essentially what the clause says, I see no reason to think that it is not enforceable under Michigan law.
 
 
 52
 Insofar as the claims of the plaintiffs in the underlying lawsuit were based on the conduct of persons actually on the county payroll--Sergeant Ruth Burke, e.g.--the indemnity clause has no application, in my view, the claims not having arisen out of the performance or nonperformance by CMS of work called for by the contract. But insofar as the plaintiffs' claims against the county were based on the conduct of persons on the CMS payroll--Nurse Enyeart, e.g., who, like the other CMS employees at the jail, was alleged to have been acting on behalf of the county--it seems to me that the claims did arise out of the performance of the contract by CMS and were thus covered, appropriately, by the indemnification clause.
 
 
 53
 It may well be true that as a matter of law the county and its people were not subject to liability for the alleged wrongdoing of the CMS employees. The plaintiffs' complaint asserted otherwise, however, and it would have been imprudent for the county defendants not to appear in the action and defend themselves. Reasonable legal fees incurred in defending the county and those on its payroll against claims predicated on the conduct of the people on the CMS payroll are chargeable to CMS, in my opinion, but fees incurred in the defense of claims predicated on Sergeant Burke's conduct are not. The fees obviously cannot be divided with scientific precision, but the district court ought to be able to make a rough-and-ready allocation that would pass muster as a practical matter.
 
 
 54
 As to the amount paid in settlement, it seems to me that the county is probably entitled to indemnification to the extent that the payment (a) was reasonable in amount, under the circumstances, and (b) was related to the conduct of CMS employees, as opposed to county employees. Here again a precise allocation would be difficult, but a passable approximation should not be beyond the capacity of the district court.
 
 
 55
 For the foregoing reasons I concur in the decision to vacate the award and remand the case, but I would instruct the district court to proceed along the lines I have indicated.
 
 
 
 [1]
 Payne was initially housed at the Washtenaw County jail as a pretrial detainee; however, based upon the limited record before us, it appears that at the time of her death she was serving a custodial sentence and was, therefore, an inmate. Nonetheless, whether Payne was an inmate or pretrial detainee, our analysis does not change. The Eighth Amendment protection against cruel and unusual punishment extends to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. Whitley v. Albers, 475 U.S. 312, 327 (1986)
 
 
 [2]
 Willie Caldwell is the oldest son of Mary Ruth Payne
 
 
 [3]
 Specifically, plaintiff's claims against the County included: (1) that its actions deprived Ms. Payne of her Eighth Amendment right to be free from cruel and unusual punishment; (2) that its policies, practices, and customs evidenced a deliberate indifference to Ms. Payne's serious medical needs; and (3) that it deprived Ms. Payne of her life without substantive due process in violation of the Fourteenth Amendment. These claims were also made against the individual county defendants. Further, the County and the individual county defendants were also sued in their official capacities under state law, M.C.L. Secs. 51.71, 791.262(f)(3), for gross negligence
 
 
 [4]
 The district court had entered a directed verdict in favor of Dr. George Fischmann, a CMS employee
 
 
 [5]
 Although the district court issued its opinion granting the County's motion for summary judgment on October 24, 1990, the district court did not issue its order granting the County's motion for summary judgment until January 25, 1991
 
 
 [6]
 In Jennings v. Southwood, 521 N.W.2d 230 (Mich.1994), the Supreme Court of Michigan stated that:
 Wilful and wanton misconduct, on the other hand, describes conduct that is either wilful--i.e., intentional or its effective equivalent. "[W]ilful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference as to whether harm will result as to be the equivalent of a willingness that it does."
 Id. at 237 (quoting Burnett v. City of Adrian, 326 N.W.2d 810, 812 (Mich.1982)).
 
 
 [7]
 The Act states that " '[g]overnmental agency' means the state, political subdivisions, and municipal corporations." M.C.L. Sec. 691.1041(d) (West 1995), and also states that " '[p]olitical subdivision' means any ... county...." M.C.L. Sec. 691.1401(b)
 
 
 [8]
 Further, although we express no opinion as to the eventual outcome of this case, we note that in the event the settlement is silent as to any admission of liability on the part of the County or its employees, the County will be entitled to indemnification. In this action, CMS was not without opportunities to protect itself against the County's settlement. First, CMS could have incorporated a provision in the written indemnity agreement which required its approval of any settlement considered by the County before permitting the County to seek indemnification for any settlement. Second, as previously noted, CMS refused the opportunity to defend this action in its own right. CMS received notice of plaintiffs' complaint on May 5, 1989, and directed the County to delay any decision regarding indemnification until after discovery revealed the strength of plaintiff's claims. Thus, if the settlement turns out to be silent as to the County's motivations for settling with plaintiffs, CMS will have waived its right to claim that the settlement is tantamount to, and must be treated as, an admission of gross negligence