105 F.3d 659
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Inez MILLER, Administratrix of the estate of Gregory B.
Clemmons, Plaintiff-Appellant,
v.
MONTGOMERY COUNTY, OHIO, et al., Defendants-Appellees.
 No. 95-3830.
 United States Court of Appeals, Sixth Circuit.
 Jan. 9, 1997.
 
 Before: MARTIN, Chief Judge; BROWN, Circuit Judge; and McCALLA,* District Judge.
 PER CURIAM.
 
 
 1
 Inez Miller, the administratrix of the estate and grandmother of Gregory B. Clemmons, brought this action under 42 U.S.C. § 1983 to recover damages resulting from the suicide death of Clemmons during his detention at the Montgomery County Juvenile Detention Center. Miller appeals from the decision of the district court granting defendants' motion for summary judgment. The issues on appeal are as follows: (1) whether defendants were deliberately indifferent to Clemmons's medical needs; (2) whether defendants were deliberately indifferent in their failure to train; and (3) whether a different standard of liability should apply for juvenile detainees. For the reasons described herein, we AFFIRM the decision of the district court.
 
 
 2
 On October 12, 1992, seventeen (17) year old Gregory B. Clemmons was admitted to the Montgomery County Juvenile Detention Center after being arrested on charges of carrying a concealed weapon and aggravated menacing. At admission, consistent with Detention Center policy, Clemmons was asked to complete a suicide risk assessment and to submit to a physical examination. Although the suicide risk assessment has never been produced, a Unit Log indicates that he received a score of four (4), a score not high enough to place him even in the lowest category of suicide risk on the Detention Center's scale. Under Detention Center policy, a score of twenty (20) indicates a mild suicide risk. Clemmons had been given the suicide risk assessment by the Center on prior occasions, and on June 25, 1992, he received his highest score on the risk assessment, an eleven (11), a score not high enough to rank in the lowest risk category on the Center's scale (a score of twenty (20) indicated a mild risk). In the physical examination, Clemmons admitted that he used drugs, but neither the doctor nor the nurse noticed any outward signs that Clemmons was a suicide risk. Moreover, the Detention Center's records indicate that Clemmons was a cooperative individual with no emotional problems during his previous stays.
 
 
 3
 On October 13, 1992, Clemmons was taken to Juvenile Court for a detention hearing. After the hearing, Miller informed Clemmons's probation officer, Lori Masters, and a Montgomery County Sheriff's Deputy, John Doe, that Clemmons had attempted suicide roughly two months earlier. Upon hearing the information, Masters contacted Brent Haas, a mental health therapist at the detention center and informed him of Miller's concerns. Shortly thereafter, Haas interviewed Clemmons for the purpose of determining whether Clemmons was in fact suicidal. Based on his conversation with Clemmons, Haas concluded that Clemmons was not suicidal and that no additional safety measures were required.
 
 
 4
 While in his room, Clemmons was checked approximately every fifteen (15) minutes by a Detention Center Youth Leader. Prior to Clemmons's suicide, Abdul Ahmad, a Youth Leader at the Center, observed Clemmons writing what was later discovered to be a suicide letter to his girlfriend. At 5:35 P.M., Clemmons gave Ahmad the letter for mailing in a sealed envelope. The outside of the envelope was marked with such phrases as "Bye Bye Baby" and "I'm not gone if I'm still in your heart." When Ahmad returned to Clemmons's room at 5:50 P.M., he found Clemmons hanging from the ceiling.
 
 
 5
 Inez Miller subsequently filed suit pursuant to 42 U.S.C. § 1983 against the following: Montgomery County, Ohio; the Montgomery County Board of County Commissioners; the Juvenile Court Administrator, Nicholas Kuntz; a Montgomery County Sheriff's Deputy, John Doe; and Adbul Ahmad, a youth leader at the Montgomery County Juvenile Detention Center ("Montgomery County"). Miller claimed that Montgomery County deprived Clemmons of his rights under the Fourteenth Amendment by (1) evincing a deliberate indifference to his serious medical needs and (2) failing to train detention center employees in suicide prevention.
 
 
 6
 On January 13, 1994, Montgomery County moved for summary judgment. Finding no genuine issue of material fact as to whether the Defendants were deliberately indifferent in the face of knowledge of a strong likelihood that Clemmons would attempt suicide, the district court granted summary judgment in favor of Montgomery County. The court also found that Montgomery County and its officials were not liable under § 1983 for failure to train.
 
 
 7
 In Barber v. City of Salem, 953 F.2d 232 (6th Cir.1992), we set forth the standard to be applied in a § 1983 claim alleging that a municipality and its officials caused the suicide death of a juvenile detainee in violation of the detainee's constitutional rights as secured under the Fourteenth Amendment. We stated it as a question of "whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs." Id. at 238-40. The state of mind required for a finding of deliberate indifference was stated in Horn v. Madison County Fiscal Court, 22 F.3d 653 (6th Cir.), cert. denied, 115 S.Ct. 199 (1994). "[K]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." Id. at 660.
 
 
 8
 Thus, to prevail, the claimant must demonstrate that the conduct of Montgomery County, or the lack thereof, met the following two prongs of the deliberate indifference standard: (1) knowledge of a strong likelihood that the detainee would take his own life, or of circumstances indicating a strong likelihood that he would do so, and (2) failure to take adequate precautions. Applying this standard to the facts of this case, Ms. Miller failed to show facts that establish deliberate indifference on the part of Montgomery County to the medical needs of Clemmons.[1]
 
 
 9
 Miller also argues that defendant Montgomery County, its commissioners, and the Juvenile Court Administrator, Nicholas Kuntz, should be held liable under § 1983 for failure to train.
 
 
 10
 In order to hold [a] County liable under § 1983 for failure to train adequately, the plaintiff must prove that the training program is inadequate to the task an officer must perform; that the inadequacy is the result of deliberate indifference; and that the inadequacy is "closely related to" or "actually caused" the plaintiff's injury.
 
 
 11
 Matthews v. Jones, 35 F.3d 1046, 1049 (1994) (citing Canton v. Harris, 109 S.Ct. 1197 (1989)).
 
 
 12
 Miller has introduced no evidence indicating that the training program was inadequate, much less that it was inadequate due to the County's deliberate indifference. Instead, Miller offers only conclusory statements suggesting that Ahmad was not trained, but the record indicates that Ahmad did in fact complete a twenty (20) hour Suicide Prevention in Custody Correspondence Course.
 
 
 13
 Miller's final argument is that this Court should apply a less stringent standard than deliberate indifference to juvenile suicide cases. This Court has recently considered and rejected this argument, Horn v. Madison County Fiscal Court, 22 F.3d 653 (6th Cir.1994), and the circuit precedent rule requires that we follow that decision, see, e.g., Salmi v. Secretary of Health and Human Servs., 774 F.2d 685, 689 (6th Cir.1985). Consequently, Miller's argument is unavailing.
 
 
 14
 AFFIRMED.
 
 
 
 *
 The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 The defendants also raise the defense of qualified immunity. We do not need to address this issue, however, given the disposition of the case