65 F.3d 169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ricky A. WHITE, Plaintiff-Appellee,
v.
Ronald HARMON; Ronald Clewett; and Keith Blanchard,
Defendants-Appellants.
 No. 94-1456.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1995.
 
 Before: CONTIE, RYAN, and SUHRHEINRICH, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The plaintiff, Ricky White, brought this 42 U.S.C. Sec. 1983 action against the defendants and the City of Taylor, alleging that the individual defendants used excessive force in arresting him and that the City of Taylor's failure to train the officers resulted in their use of excessive force. The district court entered summary judgment for all defendants.
 
 
 2
 The individual defendants appeal from the district court's denial of their motions for summary judgment on the basis of qualified immunity and on the basis of collateral estoppel or issue preclusion. Although the briefs are written as though the City of Taylor were an appellant, no claim of appeal was filed by the City of Taylor in this case. The City's petition for leave to appeal, filed separately, was denied by this court in an order entered on June 21, 1995.
 
 
 3
 We affirm the denial of summary judgment on qualified immunity as to Officer Clewett; reverse the denial of summary judgment on qualified immunity as to Officers Harmon and Blanchard; and decline to exercise appellate jurisdiction over the defendants' appeal of the denial of summary judgment on the basis of collateral estoppel or issue preclusion.
 
 I.
 
 4
 In the early morning hours of April 30, 1991, Officers Mize and Blanchard of the Taylor police force were investigating two abandoned automobiles believed to be stolen. During the inspection, the officers noticed two other cars approaching on the road. The approach was suspicious--the two cars alternately started and stopped, started and stopped. The officers already suspected that the location was a drop-off point for stolen vehicles, so Mize and Blanchard followed the two cars.
 
 
 5
 Blanchard pulled over the car being driven by Isaac Rickles, determined that Rickles was driving with a suspended license, and arrested him. Mize followed the plaintiff, Ricky White, into a driveway. White exited the car he had been driving and knocked on the door of the house nearby. He then went around the side of the house, jumped over a fence, and fled. Mize observed that the engine of the car White had driven was running without keys in the ignition and that the steering column was damaged. Mize radioed for assistance.
 
 
 6
 Officer Harmon responded to the request for assistance. Harmon spotted White running and unsuccessfully ordered White to stop. Eventually, Harmon found the plaintiff in a field, tackled him to the ground, and handcuffed him. Blanchard arrived on the scene, and the two officers began to drag White to the police car. After dragging White about fifty yards, they contacted Officer Clewett, the canine handler, by radio to inform him that the suspect had been apprehended. According to Harmon, Clewett "told" them not to remove the plaintiff until the canine finished the track. When Clewett and the dog arrived, Blanchard and Harmon yanked White to his feet. As White stood up, the dog bit his right elbow. Clewett ordered the dog to stop. Harmon examined the plaintiff's bleeding arm and determined that White required medical attention at a hospital.
 
 
 7
 On March 11, 1993, the plaintiff brought an action in Michigan state court, alleging state law causes of action in addition to a Sec. 1983 cause of action. The defendants removed to federal court, but the district court remanded the state causes of action. For the remaining Sec. 1983 claim, the plaintiff alleged that the individual officers violated the Fourth Amendment bar against unreasonable seizures by using excessive force in arresting him. In addition, the plaintiff alleged that the City of Taylor was deliberately indifferent to his rights by inadequately training Clewett and the dog.
 
 
 8
 During discovery, White deposed Clewett who testified that the City had not provided him any canine-handling training aside from handing him some unspecified written policy. Remarkably, the defendants' counsel did not ask Clewett any questions for clarification. In addition, the defendants proffered no evidence explaining the training, if any, received by the police dog. At oral argument, the defendants' counsel asserted that both the canine handler and the dog are "certified," but the record below does not disclose that either Clewett or the dog had received any "tracking" training.
 
 
 9
 The individual defendants moved for summary judgment on the ground of qualified immunity. The City moved for summary judgment, claiming that the plaintiff's evidence did not establish deliberate indifference. All defendants moved for summary judgment on the basis of collateral estoppel; White's state law claims had been rejected by a Michigan state court and jury. The district court denied the motions. The individual defendants now appeal.
 
 II.
 A.
 
 10
 Because the defendants claim qualified immunity for their actions, the relevant question is the " 'objective legal reasonableness' of the action[s] ... assessed in light of the legal rules that were 'clearly established' at the time it was taken.' " Anderson v. Creighton, 483 U.S. 635, 639 (1987) (citations omitted). That is, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640.
 
 
 11
 The right claimed to be violated here is the plaintiff's Fourth Amendment right to be free from unreasonable seizures, specifically, to be free from excessive force during the course of an arrest. Whether a seizure involved excessive force depends on the "objective reasonableness" of the seizure (not to be confused with the "objective legal reasonableness" term used to describe qualified immunity).
 
 
 12
 "[A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure,' " should be analyzed under the Fourth Amendment's "objective reasonableness" test.
 
 
 13
 Matthews v. Jones, 35 F.3d 1046, 1050 (6th Cir.1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). This test
 
 
 14
 requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
 
 
 15
 Graham, 490 U.S. at 396. We judge the "reasonableness" of the officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. Accordingly, the question here as to each individual defendant is whether (as to the qualified immunity aspect) a "reasonable official would understand that what he" did constituted (as to the excessive force aspect) an "objectively [un]reasonable" seizure.
 
 
 16
 We conclude that, based on the existing record, Officer Clewett is not entitled to qualified immunity. Viewing the evidence in the light most favorable to the plaintiff, Clewett requested, for no apparent reason, at least no reason found in the record, that other officers postpone taking the plaintiff away so that he could bring a little-trained canine to the arrest scene. Clewett, who himself had virtually no canine-handling training, then brought the dog, which Clewett knew had bitten someone on a previous occasion, into the immediate presence of the handcuffed plaintiff the dog was "tracking"; close enough to permit the dog to bite the plaintiff. A reasonable officer would understand that those facts constitute an objectively unreasonable seizure. The district court properly denied Clewett's motion for summary judgment.
 
 
 17
 However, the district court should have granted Harmon and Blanchard's motions. The record shows that these two officers were "told" by Clewett not to remove the plaintiff until the dog finished the track. There is no evidence that Blanchard knew that the City had failed to train Clewett and the dog. A reasonable official would not understand that it was objectively unreasonable to heed Clewett's request. As far as Blanchard knew, Clewett and the dog were adequately trained. Similarly, although Harmon knew that some written canine policy existed, he did not know the policy's content, and the evidence does not show that Harmon knew how little training Clewett and the dog received. Harmon did know of one other biting incident involving Clewett's dog, but that knowledge does not render unreasonable Harmon's decision to wait for Clewett and the dog to appear. Accordingly, the district court should have entered summary judgment for Harmon and Blanchard on the basis of qualified immunity.
 
 B.
 
 18
 The district court's order denying summary judgment on the basis of collateral estoppel or issue preclusion is not an independently final, appealable order under 28 U.S.C. Sec. 1291. In order to decide this issue, we would have to exercise pendent "issue" appellate jurisdiction, and there is no reason to do so. The denial of summary judgment on issue preclusion grounds is neither "inextricably intertwined" with the appealable qualified immunity judgment nor necessary in order to ensure "meaningful review" of the qualified immunity judgment. See Swint, et al. v. Chambers County Comm'n, et al., 115 S.Ct. 1203 (1995); see also Johnson v. Jones, 115 S.Ct. 2151 (1995). We decline to exercise jurisdiction over this aspect of the district court's order.
 
 III.
 
 19
 To summarize, we AFFIRM the denial of summary judgment on qualified immunity as to Officer Clewett; REVERSE the denial of summary judgment on qualified immunity as to Officers Harmon and Blanchard; and DECLINE to exercise pendent "issue" appellate jurisdiction over the defendants' appeal on the basis of issue preclusion and DISMISS this aspect of the appeal.