NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0050n.06

Case No. 09-4549

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jan 24, 2011**
LEONARD GREEN, Clerk

MIRIAM WHEELER, )
)
Plaintiff-Appellant, )
)
v. )
)
LONNIE NEWELL; R. BESS; D. ALLEN; )
CITY OF SANDUSKY, )
)
Defendants-Appellees. )
)
_____ )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

BEFORE:  BATCHELDER, Chief Judge; SUTTON and McKEAGUE, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge.  Miriam Wheeler appeals the district court's order granting the defendants summary judgment on Wheeler's Fourth Amendment claim for false arrest.  Because the defendants did not violate any constitutional right, we AFFIRM.

**I.**

This case arises from events that took place at Wheeler's home in the early hours of August 10, 2007.  Hernee Elizee, the mother of a minor child, K.G., arrived at the Sandusky Police Department and asked for help in securing K.G.'s return from a residence located at 1105 West Washington Street, Sandusky, Ohio.  Elizee had given K.G. permission to stay at the residence with Wheeler and her husband, who are K.G.'s paternal grandparents, until August 16, 2007.  Unbeknownst to Elizee, K.G.'s father, Almerio Griffith, had traveled from his home in Massachusetts to visit K.G. and was also staying at the Wheeler home.  Griffith and Elizee had never

been married,[1] and Elizee feared for K.G.'s safety in Griffith's presence. Upon learning that Griffith was with K.G. at the Wheeler residence, Elizee drove from her home in Florida to Sandusky, Ohio, to pick up her son.

At Elizee's request, Officer Lonnie Newell accompanied Elizee to Wheeler's residence and agreed to retrieve K.G. It was approximately 1:00 a.m. when they arrived at the residence. Wheeler, her husband, and Griffith were watching a movie together, and K.G. was asleep in a bedroom. Officer Newell rang the doorbell, and Elizee waited in her car, across the street from the residence. When Wheeler opened the door, Officer Newell explained to her that Elizee was there to pick up K.G. Wheeler then invited Officer Newell into her home to discuss the matter, and showed him an email from Elizee indicating that K.G. would visit with Wheeler and her husband until August 16, 2007.

Officer Newell explained to Wheeler that Ohio law entitles an unmarried mother to full custody of a child unless there is a court order to the contrary. *See* Ohio Rev. Code Ann. § 3109.042. He requested that Wheeler and her husband return K.G. to Elizee. At that point, Griffith began yelling at Elizee and made his first of three attempts to run past Officer Newell and confront Elizee outside the house. During the course of these events, Officers Dawn Allen and Rob Bess arrived as backup. When Griffith made his third attempt to run past the officers and confront Elizee, Officer Newell arrested him for disorderly conduct and subsequently resisting arrest.

---

[1]This particular fact is relevant because, under Ohio law, "[a]n unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian." Ohio Rev. Code Ann. § 3109.042. Although Wheeler claims that Elizee and Griffith had signed a written agreement in Massachusetts granting Griffith joint custody, she has presented no evidence of any court order governing the custody arrangement. Absent any court order to the contrary, we presume that Elizee had lawful custody of K.G. under Ohio law. *Id.*

Griffith's arrest upset Wheeler, and she began to protest and ask the police officers to let him go. She then headed towards the door leading outside to confront Elizee. Her husband "grabbed [her] by the hand"[2] as she went. Once at the front door, Wheeler shouted across the street at Elizee that "God would punish her for what she was doing." The officers assert, and Wheeler does not deny, that she was very upset throughout these events and refused to obey the officers' commands to calm down. Officer Allen arrested Wheeler because "she was upset and would not calm down."

Wheeler initiated this action in state court against the City of Sandusky, Ohio, and Sandusky Police Department Officers Lonnie Newell, Robert Bess, and Dawn Allen, seeking monetary damages for alleged violations of Ohio tort law and for various claims pursuant to 42 U.S.C. § 1983, including a Fourth Amendment allegation of false arrest. The defendants removed the matter to federal district court based on federal question jurisdiction.

The defendants filed a motion for summary judgment with respect to all of Wheeler's claims, which the district court granted. In this timely appeal, Wheeler challenges only the portion of the district court's order that granted summary judgment to the defendants on her Fourth Amendment false arrest claim.

---

[2]It is unclear whether this action was an attempt to stop Wheeler, as the district court construed it, or a gesture of support, as Wheeler's language might imply, *see* R. 10-1, ¶ 8 ("My husband . . . took me by the hand as I went to the front door.").

## II.

We review de novo a district court's order granting summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Under Federal Rule of Civil Procedure 56(c),[3] summary judgment is proper if the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." We must review the facts and evidence in the light most favorable to the nonmoving party. *Warf v. Bd. of Elections*, 619 F.3d 553, 558 (6th Cir. 2010).

A government official is not liable for civil damages unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating whether a defendant is entitled to qualified immunity, we look at two questions: (1) whether the facts alleged make out the violation of a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). We are free to approach these questions in any order, *Pearson v. Callahan*, 129 S. Ct. 808, 821 (2009), and a defendant is entitled to qualified immunity if the plaintiff fails on either prong, *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

We first address the question of whether Wheeler has made out the violation of a constitutional right. If she has not, then we need not address the second question. *See Thacker v. Lawrence Cnty.*, 182 F. App'x 464, 470 (6th Cir. 2006) ("In light of the fact that [plaintiff] has failed

---

[3]A revised version of Federal Rule of Civil Procedure 56 became effective on December 1, 2010. The motion for summary judgment in this case was filed prior to December 1, 2010, and is governed by the version of Rule 56 that was in effect at the time the motion was filed.

to prove that the deputies engaged in unconstitutional conduct, there is no need for us to perform the second step of the qualified immunity analysis . . . .").

The Fourth Amendment protects against unreasonable searches and seizures, U.S. Const. amend. IV, and an arrest constitutes a seizure for Fourth Amendment purposes, *see*, *e.g.*, *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008). An arrest does not violate the Fourth Amendment if it is based on probable cause. *Whren v. United States*, 517 U.S. 806, 818-19 (1996); *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996). An officer has probable cause to arrest someone if the officer has "reasonably trustworthy information . . . sufficient to . . . conclude that an individual either had committed or was committing an offense." *Torres-Ramos*, 536 F.3d at 555 (internal quotation marks omitted). This rule applies irrespective of the seriousness of the crime. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

In Ohio, it is a crime for an individual to "recklessly cause inconvenience, annoyance, or alarm to another by . . . [c]reating a condition that . . . presents a risk of physical harm to persons or property or by any act that serves no lawful and reasonable purpose of the offender." Ohio Rev. Code § 2917.11(A). When this conduct occurs in a police officer's presence, it is a fourth degree misdemeanor. § 2917.11(E)(3)(c). Under Ohio law,

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances exist.

§ 2901.22(C).

Based on the undisputed facts of this case, the district court found that Wheeler's conduct amounted to a violation of § 2917.11(A).[4] Wheeler concedes that she protested Griffith's arrest; that she headed towards the front door of her home to confront Elizee; that she shouted angry words at Elizee; and that she was arrested because she was upset and would not calm down. Courts have held that similar behavior constitutes disorderly conduct under § 2917.11(A). *See Thacker*, 182. F. App'x at 470 (defendant's behavior constituted disorderly conduct under § 2917.11(A) when he raised his voice, swore loudly at police, refused to calm down, and was visibly upset)*; Ohio v. Fant*, 607 N.E.2d 548, 549-50 (Ohio Ct. App. 1992) (defendant violated § 2917.11(A) by "loudly protesting" someone else's arrest while also approaching police officers).

Wheeler claims that, even if her conduct was disorderly, her arrest was nevertheless unreasonable because it was "conducted in an extraordinary manner, unusually harmful to [her] privacy or even physical interests." Appellant's Br. at 8 (citing *Atwater*, 532 U.S. at 353). The only "extraordinary" circumstance she identifies is that she was arrested in her home for a minor misdemeanor. But the Supreme Court has made clear that, so long as probable cause exists, we need not "balance the interests and circumstances involved in particular situations." *Atwater*, 532 U.S. at 354. Wheeler's argument to the contrary is unavailing. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Id.*

---

[4]At the district court level, the defendants also argued that Wheeler had violated Ohio Revised Code § 2919.23(A)(1), which prohibits any person from interfering with the custody of a child under age 18. The district court did not rely on that argument in its order, and the parties have not raised it on appeal. Therefore, we deem it waived. *See United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006).

Wheeler's conduct took place in the presence of the defendant police officers. They therefore had probable cause to arrest her. *See Torres-Ramos*, 536 F.3d at 555. Accordingly, the defendants did not violate Wheeler's constitutional rights, and the defendants are therefore entitled to judgment. *See Chappell*, 585 F.3d at 907.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.