NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0758n.06

No. 12-3796

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Aug 15, 2013*
DEBORAH S. HUNT, Clerk

SHANYA RAINEY; ANTWAN ROLAND,            )
                                         )
    Plaintiffs-Appellants,           )       ON APPEAL FROM THE
                                         )       UNITED STATES DISTRICT
v.                                       )       COURT FOR THE SOUTHERN
                                         )       DISTRICT OF OHIO
JEFF PATTON, In his individual capacity; )
BRANDON GOFF, In his individual capacity,)       OPINION
                                         )
    Defendants-Appellees.            )
                                         )

BEFORE:  KETHLEDGE, WHITE, and STRANCH, Circuit Judges.

**JANE B. STRANCH**, Circuit Judge.  Plaintiffs Shanya Rainey and Antwan Roland appeal

the magistrate judge's grant of summary judgment in favor of Officers Jeff Patton and Brandon Goff

in this civil rights action filed under 42 U.S.C. § 1983.  For the reasons set forth below, we

REVERSE and REMAND for further proceedings.

This case arises out of a traffic stop in Cheviot, Ohio, on September 23, 2010.  Prior to the

stop, Officers Patton and Goff had responded to a domestic call at Rainey's apartment.  Although

a physical altercation had not occurred, Rainey and her boyfriend were arguing continuously, and

she requested that the officers escort the boyfriend from her residence.  Rainey also left the

apartment and was pulled over moments later by Patton for failing to yield to oncoming traffic.

Rainey testified at her deposition that Patton then forced her to exit the car and get on the ground;

pointed his firearm at her face while yelling at her to do so; and eventually retrieved his canine from the vehicle[1] and brought it over to where she was lying on the ground. The canine then bit her. Roland, who happened to be riding his scooter nearby, saw the dog bite Rainey and watched Patton and Goff place her under arrest. The officers directed Roland to leave. After Roland refused, Goff cited him for disorderly conduct. An Ohio municipal court acquitted Roland after a bench trial.

Rainey and Roland subsequently filed this § 1983 action against Patton and Goff, claiming excessive force, false arrest, and malicious prosecution. The parties consented to the magistrate judge's jurisdiction. Following discovery, Patton and Goff filed a motion for summary judgment, which the magistrate judge granted. As to Rainey's excessive force claim, the magistrate judge determined that Patton's actions were reasonable under the circumstances because Rainey admitted that she did not immediately pull her vehicle over after Patton turned on his cruiser lights; did not immediately comply with Patton's instruction to lie on the ground and put her cell phone down; and attempted to use the cell phone during the stop. The magistrate judge found that this "evasive behavior" and failure to obey orders would "lead a reasonable officer to conclude that [she] was evading arrest and/or posed [a] threat to . . . Patton's safety." The magistrate judge also distinguished excessive force cases involving police dogs where qualified immunity had been denied because they "involved an intentional commanded deployment of the canine by the Officer handler and/or involved allegations of inadequate canine training." The magistrate judge found the

---

[1]This is disputed by Patton, who claims that the dog escaped out of the car window.

"undisputed evidence" established that Patton did not command the dog to bite Rainey. This timely

appeal followed.

We review de novo the magistrate judge's decision to grant summary judgment. *Brooks v.*

*Rothe*, 577 F.3d 701, 705 (6th Cir. 2009). Summary judgment is appropriate when, viewing the

evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see*

*also Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011).

## I. ANALYSIS

The magistrate judge granted summary judgment in favor of Patton and Goff on qualified-

immunity grounds. Qualified immunity shields an officer from § 1983 liability unless "the facts

alleged show the officer's conduct violated a constitutional right," and "the right was clearly

established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001), *abrogated in part by*

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In order to prevail, a plaintiff "must establish that

the defendant acted knowingly or intentionally to violate his or her constitutional rights, such that

mere negligence or recklessness is insufficient." *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir.

1999).

## A. Rainey's Claim

We begin with Rainey's excessive force claim. "A seizure must occur before an excessive

force claim is cognizable under the Fourth Amendment." *Dunigan v. Noble*, 390 F.3d 486, 492 (6th

Cir. 2004) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844–45 & n.7 (1998)). Rainey

alleges that Patton "intentionally releas[ed] his police dog onto her," in order to effectuate an unlawful seizure. "A seizure within the meaning of the Fourth Amendment . . . 'requires an intentional acquisition of physical control.'" *Id.* (quoting *Brower v. Inyo Cnty.*, 489 U.S. 593, 596 (1989)). In other words, the Fourth Amendment is implicated "only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower*, 489 U.S. at 597. This court has applied the Fourth Amendment intent requirement to excessive force claims involving police dogs. *See Neal v. Melton*, 453 F. App'x 572, 577 (6th Cir. 2011); *Dunigan*, 390 F.3d at 492. However, "claims involving proof of a defendant's intent seldom lend themselves to summary disposition" and "rarely will be supported by direct evidence of such intent." *Holzemer v. City of Memphis*, 621 F.3d 512, 525 (6th Cir. 2010) (internal quotation marks omitted); *see Walker v. Davis*, 643 F. Supp. 2d 921, 928–29 (W.D. Ky. 2009) (explaining that a sheriff's intent to seize a motorist by striking his motorcycle with the sheriff's police cruiser could be proved through circumstantial evidence).

The magistrate judge, as well as the defendants, put weight on the fact that Patton did not give the dog any type of verbal command,[2] and that Rainey's non-expert testimony alleging that Patton did, in fact, "command" the dog to bite her cannot be used to create a genuine issue of material fact. Although Rainey's affidavit contends that the release of the choke chain "most

---

[2]Officer Patton explained that his dog is not trained to "attack" suspects, but was instead trained to bite and hold a suspect when: (1) the dog is sent to track and apprehend the suspect or (2) the suspect moves defensively.

certainly was a command to the dog to attack" under the circumstances,[3] her deposition testimony more clearly states that Patton "let the chain go, he loosened up on the chain because [the dog] was like barking and . . . he was choking hisself [sic] barking at me and the officer let him go a little bit and that's when he bit me because he was that close to me with the dog." Patton admits that he brought the dog just two feet away from Rainey while she was on the ground. While Rainey turned her head just before she was bitten, her testimony indicates that she could hear the dog straining against the chain, and could also hear the chain loosened right before the bite.

Construing the testimony in the light most favorable to her, Rainey is alleging that while Patton was yelling at her, he brought an agitated dog over, placed it in extremely close proximity to her, and intentionally loosened the choke chain that was keeping the dog from reaching her. Roland also testified that he saw Patton release the choke chain, and while his assertion of knowledge as to what this meant in terms of dog-training is dubious, his testimony on what he *saw* bolsters Rainey's assertions. Further, a reasonable jury could infer Patton's intentionality from Rainey's testimony that

---

[3]She specifically states as follows:

[W]hile it is true I did not hear defendant Patton give any specific *verbal* command to the dog to attack me it is not true that I did not hear Patton give such a command at all. Patton yelled at me, thus causing the dog to become agitated, and advanced the dog to me while I was laying face down and flat on the ground. Patton took the agitated and frantically barking dog directly over to me while Patton continued shouting, and then Patton released the 'choke chain' on the dog's collar just after I turned my head away from the dog. The dog then bit me. The release of the choke chain under these circumstances most certainly was a command to the dog to attack me.

Patton was loudly yelling at her while she was getting on the ground and pointed a gun at her face. Based on these allegations and the totality of the circumstances, we do not think that expertise in dog training is necessary to establish that a factual dispute exists. This dispute is undoubtedly material, as it goes to whether Patton's actions were intentional as opposed to reckless or negligent.

In order to establish that Patton's intentional seizure involving the dog constituted an excessive use of force, Rainey must show that such force was objectively unreasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Dunigan*, 390 F.3d at 493. A court "consider[s] not the 'extent of the injury inflicted' but whether an officer subjects a detainee to 'gratuitous violence.'" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 252 (6th Cir. 2010) (quoting *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009)). This analysis requires a court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). The court "pay[s] particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight.'" *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham,* 490 U.S. at 396). The reasonableness of a police officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. In assessing such claims, the court construes the facts in the light most favorable to the plaintiff. *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010).

Viewing the facts in the light most favorable to Rainey, we conclude that Patton's decision to employ his canine during the course of the traffic stop was unreasonable. Rainey committed a minor traffic offense. Patton had just come from responding to a domestic call placed by Rainey, and nothing in the record indicates that Rainey was a person Patton would have considered a threat to his safety or that of others such that it would be necessary to employ a canine. Moreover, Patton was a 6', 220-pound man, whereas Rainey was around 5'6" and between 150 and 175 pounds. While admitting that she did not stop immediately, Rainey's testimony indicates that it would not have been appropriate to stop on the road so she drove to a nearby parking lot. She also testified that she drove very slowly in the parking lot while finding a place to park. Although Rainey did not get on the ground initially when Patton commanded her to do so, there was not an inordinate delay in her compliance and she was on the ground by the time the dog was brought over. We therefore cannot consider her to have been "actively resisting arrest or attempting to evade arrest by flight" at that point. Viewed in the light most favorable to Rainey, we cannot conclude that a "reasonable officer on the scene" with Patton's years of experience would perceive Rainey to be such a safety threat or such a flight risk that the use of a police dog would be necessary to detain her. In sum, Rainey established that a reasonable jury could find that a Fourth Amendment violation occurred.

The next question in the qualified immunity analysis is "whether or not [Rainey's] Fourth Amendment protections against excessive force, as it relates to the use of police dogs, was clearly established at the time the incident[] occurred." *Campbell v. City of Springboro*, 700 F.3d 779, 788 (6th Cir. 2012). In order to be clearly established, "'[t]he contours of th[e] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.*

-7-

(quoting *Wheeler v. City of Lansing*, 660 F.3d 931, 938 (6th Cir. 2011)) (alteration in original).

"However, 'there need not be a case with the exact same fact pattern, or even fundamentally similar or materially similar facts; rather, the question is whether the defendants had fair warning that their actions were unconstitutional.'" *Norton v. Stille*, No. 12-1778, 2013 WL 1955889, at *4 (6th Cir. May 13, 2013) (quoting *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005)) (internal apostrophes omitted).

*Campbell* outlined the contours of the right to be free from excessive force in police canine cases. There we noted the range of developed law, observing that summary judgment in favor of the officer has been upheld when there were "potentially dangerous" suspects who exhibited "irrational behavior" and when the suspects were in unlit buildings or heavily wooded areas where the "police were vulnerable to ambush." *Campbell*, 700 F.3d at 789.[4]  On the other end of the spectrum, we noted that summary judgment on qualified immunity grounds was denied in cases in which the officer "allowed a little-trained canine, who had previously bitten someone, to bite a handcuffed suspect." *Id.* The magistrate judge determined that the facts of this case "more closely aligned" with

---

[4]These cases also involved properly trained dogs, and warnings were given prior to the release of the dogs. The magistrate judge specifically noted that no allegations had been made regarding the dog's training in this case. Although courts have considered this particular factor in other cases, they have done so in response to plaintiffs' allegations. *See, e.g.*, *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (considering plaintiff's claims that the police department had a policy or practice of using deadly force in the form of police dogs *and* that there was a policy of inadequately training the dogs). Here, there was no claim of improper training; instead, there is simply an allegation that a police officer brought an agitated dog to stand over a suspect on the ground; continued to yell at the suspect; and intentionally loosened the chain that was restraining the dog. Although an allegation of improper training may frequently be asserted in these types of cases, we do not find it necessary to avoid summary judgment under the facts presented here.

the former category based on Rainey's failure to pull over immediately, failure to obey Patton's commands, at least initially, and due to the fact that she was not handcuffed.

We disagree. As previously noted, there is nothing to indicate that Rainey was considered dangerous. Patton had just left Rainey's apartment where he was responding to *her* request that police intervene in a domestic dispute. He pulled her over for a minor traffic violation—failure to yield to oncoming traffic. Although Rainey was not yet handcuffed when Patton brought the canine over to her, she was on the ground, and there is no suggestion in any deposition testimony that she was attempting to flee at the point that she was on the ground. Although Rainey appears to have had her cell phone in hand, she alleged that she did not try to make a call until she was bitten and she was not texting anyone, which directly contradicts Patton's testimony that Rainey "would not stop texting." The interaction occurred in a parking lot with an overhead street light, so there was no risk that Patton would be "ambushed." Moreover, nothing indicates that Rainey was a physically intimidating female or that she was in a position to flee such that Patton, a veteran police officer, needed the assistance of a canine. These facts stand in stark contrast to the cases in which summary judgment was granted. *See Matthews v. Jones*, 35 F.3d 1046, 1048, 1051–52 (6th Cir. 1994) (finding employment of canine reasonable where plaintiff, who was speeding and driving recklessly, tried to evade police in marked car, and eventually ran into the woods and failed to surrender after being commanded to do so); *Robinette v. Barnes*, 854 F.2d 909, 913–14 (6th Cir. 1988) (finding employment of canine to apprehend suspect reasonable because suspect likely "knew the building was surrounded, . . . [and] had been warned . . . . that a dog would be used, and . . . gave every indication of unwillingness to surrender").

The cases granting qualified immunity to the officer highlight the importance of facts establishing that a suspect has failed to surrender or has yet to be apprehended and has been given the opportunity to avoid an encounter with a dog before its employment. When such facts have not been present, use of a police canine has been deemed unreasonable. *See White v. Harmon*, 65 F.3d 169, 1995 WL 518865, at *3 (6th Cir. 1995) (finding officer's actions unreasonable where he brought a dog "into the immediate presence of the handcuffed plaintiff the dog was 'tracking'[] close enough to permit the dog to bite the plaintiff").

Based on the principles articulated in these cases, it would be clear to a reasonable officer that employing a police dog against an unarmed suspect detained on the basis of a traffic offense, who was on the ground and not attempting to flee, would constitute excessive force. Thus, in the case brought by Rainey, the magistrate judge's grant of summary judgment on qualified immunity grounds was inappropriate.

## B. Roland's Claims

Roland brought a § 1983 claim for false arrest against both defendants and for malicious prosecution under Ohio law against Officer Goff. (On appeal, Roland presses these claims only against Officer Goff, thus abandoning his false arrest claim against Officer Patton. *See Music v. Arrowood Indem. Co.*, 632 F.3d 284, 286 n.1 (6th Cir. 2011). ) The magistrate judge concluded that both claims failed as a matter of law because probable cause existed for Roland's arrest.

To state a claim for false arrest, a plaintiff must prove that the arresting officer did not have probable cause to arrest the plaintiff. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302, 307 n.12 (6th Cir. 2005). To state a claim for malicious prosecution under Ohio law, a plaintiff must

show that the charging officer did not have probable cause to charge the plaintiff. *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008). An officer has probable cause to arrest if the information he possessed at the time of the arrest was "sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Id.* at 511. Likewise, an officer has probable cause to prosecute if, at the time he initiated criminal proceedings, the information he possessed would lead a reasonable officer to conclude that the arrestee had committed the charged offense. *Sykes v. Anderson*, 625 F.3d 294, 310–11 (6th Cir. 2010).

Officer Goff cited Roland for disorderly conduct under Ohio Revised Code § 2917.11(A)(5), which prohibits a person from "recklessly caus[ing] inconvenience, annoyance, or alarm to another by . . . [c]reating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender." The facts, viewed in the light most favorable to Roland, do not indicate that he created a condition that was physically offensive or presented a risk of physical harm. According to Roland, he stood on a sidewalk about 100 feet away from the officers while they arrested Rainey. Unlike the arrestees in the cases cited by Officer Goff, Roland did not move toward the officers or anyone else or loudly protest Rainey's arrest. *Cf. Wheeler v. Newell*, 407 F. App'x 889, 892 (6th Cir. 2011); *State v. Fant*, 607 N.E.2d 548, 549–50 (Ohio Ct. App. 1992). To the extent Roland spoke loudly to the officers, it was because of his distance from them. And although Officer Goff said that Roland was on his cell phone and that he feared that Roland was summoning others, Roland denied that he had his cell phone out.

The officers argue that the municipal court's denial of Roland's Ohio Rule of Criminal Procedure 29 motion for acquittal is "probative evidence" of probable cause. Rule 29 states that "[t]he court on motion of a defendant . . . , after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged . . . if the evidence is insufficient to sustain a conviction[.]" "When considering a [Rule] 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the state[.]" *State v. Cash*, 951 N.E.2d 486, 492 (Ohio Ct. App. 2011). During the state-court proceedings, Roland moved for acquittal at the close of the state's case. The prosecutor argued that the motion should be denied because, viewing the evidence in the light most favorable to the state, Roland had his cell phone out and the officers reasonably feared that a crowd might form. The court denied the motion. Here, in contrast, the evidence must be viewed in the light most favorable to Roland, and he denies having his cell phone out. The state court's denial of the motion therefore has no probative value here. *See Sykes*, 625 F.3d at 310 n.8; *see also Brunswick v. City of Cincinnati*, No. 1:10-cv-617, 2011 WL 4482373, at *5–6 (S.D. Ohio Sept. 27, 2011).

The officers also argue that probable cause existed to cite Roland for obstructing official business in violation of Ohio Revised Code § 2921.31(A). Probable cause to arrest can be based on an officer's belief that the arrestee committed a crime, even if it is not the crime eventually charged. *Radvansky*, 395 F.3d at 307 n.12. In Ohio, a conviction for obstruction of official business requires: "(1) the performance of an unprivileged act (2) with the purpose of preventing, obstructing or delaying the performance by a public official of an authorized act within his official capacity (3) which hampers or impedes the public official in the performance of his lawful duties." *Lyons v. City*

*of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005). The officers contend that Roland interfered with their lawful arrest of Rainey. But the record belies their contention. During Roland's trial, Patton testified that Roland did not interfere with Rainey's arrest. R. 10-5, PageID# 152 ("Q. Did Mr. Roland interfere with your arrest of Miss Rainey? A. No").

The officers respond that Roland's refusal to leave the scene was an affirmative act. But the case they cite for support—*State v. Foster*, No. 13-97-09, 1997 WL 576353 (Ohio Ct. App. Sept. 17 1997)—could hardly be more different. There, the court upheld a defendant's conviction for obstructing official business where the evidence showed that he yelled at a police dispatcher in a police station for approximately half an hour. During that time, the dispatcher was attempting to "address citizens who entered the police station, answer the phones, listen to police radio transmissions, make radio calls to police officers, and monitor calls to the fire department and ambulance.[.]" *Id.* at *1. The defendant was also repeatedly told that his conduct was interfering with the dispatcher's ability to do her job. *Id.* Here, in contrast, Roland was 100 feet away from Goff and Patton during Rainey's arrest. His only communication with them was in response to their queries. And he was never told that he was interfering with police business.

In sum, viewing the facts in the light most favorable to Roland, Goff did not have probable cause either to arrest Roland or to charge him with disorderly conduct. And it was clearly established at that time that such actions, in the absence of probable cause, violate the Fourth Amendment. *Spurlock v. Satterfield*, 167 F.3d 995, 1006–07 (6th Cir. 1999); *Donovan v. Thames*, 105 F.3d 291, 297–98 (6th Cir. 1997). Goff therefore is not entitled to qualified immunity.

## II. CONCLUSION

The magistrate judge's decision as to Rainey's excessive-force claim and Roland's false-arrest and malicious-prosecution claims is REVERSED, and the case REMANDED for further proceedings consistent with this opinion.

No.  12-3796
*Rainey, et al. v. Patton, et al.*

**KETHLEDGE, Circuit Judge, concurring in part and dissenting in part.** I would affirm

the judgment granting qualified immunity to Officer Patton, but otherwise concur with the Court's

Opinion.